UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

ORIELLA ELIZABETH ST LOUIS,

                          Plaintiff,

            -against-

SUGAR RUSH INC., d/b/a MUR
RESTAURANT, TRU BY MUR INC.,
d/b/a MUR RESTAURANT, and IGOR
FAZYLOV,

                          Defendants.

-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
23-CV-6373 (RER) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

        Plaintiff Oriella Elizabeth St Louis commenced this action against Defendant

Sugar Rush Inc., d/b/a MUR Restaurant on August 25, 2023, and amended the

complaint to add Defendants Tru by MUR, d/b/a MUR Restaurant, and Igor Fazylov

on March 22, 2024. (Compl., ECF No. 1; Am. Compl., ECF No. 11.) Plaintiff alleges that

Defendants withheld tips in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et

seq*. ("FLSA") and the New York Labor Law ("NYLL"), Article 6 Section 190 *et seq*., and

failed to provide wage statements and notice of payrates in violation of the NYLL,

Article 6 Section 190 *et seq.*

        The Clerk of Court certified Defendants' default pursuant to Rule 55(a) of the

Federal Rules of Civil Procedure, and Plaintiff subsequently moved for default

judgment on December 6, 2024. (Clerk's Entry of Default, ECF No. 29; Mot. for Default

J., ECF No. 31.) For the reasons set forth below, this Court recommends that Plaintiff's

motion be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Factual Allegations

As set forth in the amended complaint, Plaintiff worked as a server at MUR restaurant from June 10, 2023, through August 12, 2023, for approximately 20 to 25 hours per week. (Am. Compl., ECF No. 11, ¶¶ 18, 19, 24.) Plaintiff alleges that Defendant Igor Fazylov is the owner of the two Corporate Defendants, and that all Defendants owned MUR Restaurant and employed her there. (*Id.* ¶¶ 10, 12.)[1] From June 2023 through July 30, 2023, Plaintiff earned $10 per hour, plus "some but not all" of the tips she earned. (*Id.* ¶ 25.) Starting on July 31, 2023, Defendants paid Plaintiff $19.50 per hour, but she received no income from her tips. (*Id.* ¶ 26.)

Plaintiff claims that Defendants unlawfully withheld tips from her throughout her employment. Staff at the restaurant pooled tips, which a manager paid out at the end of every shift. (*Id.* ¶ 33.) Plaintiff alleges that that manager, Mohammed Ali, unlawfully took "an equal/full portion of the pooled tips." (*Id.* ¶¶ 34–37.) Plaintiff also alleges that "Defendants did not advise Plaintiff they were claiming a tip credit against the minimum wage." (*Id.* ¶ 32.) Plaintiff further claims that from the start of her employment until July 30, 2023, she "was paid approximately $160–170 in tips each day, but was deprived of a portion of the tips she earned." (*Id.* ¶ 38.) Between July 31, 2023,

---

[1] Defendant Igor Fazylov owns both corporate Defendants and MUR Restaurant. (Am. Compl., ECF No. 11, ¶ 10.) Plaintiff alleges that Sugar Rush Inc. is a New York corporation with its principal place of business in Lawrence, New York. (*Id.* ¶ 8.) Plaintiff further alleges that Sugar Rush filed for dissolution effective November 15, 2022, but that she was paid by checks from Sugar Rush through June 30, 2023. (*Id.* ¶¶ 8, 27, 30.) On or about July 31, 2023, she began receiving checks from Defendant Tru by MUR, another New York corporation based in Lawrence, New York, that paid Plaintiff through the end of her employment. (*Id.* ¶¶ 9, 28.) She alleges that all three Defendants employed her and are an integrated enterprise. (*Id.* ¶¶ 12–13.)

and August 12, 2023, she alleges she did not receive any income from her tips. (*Id.* ¶¶ 19, 39.)

In connection with the default motion, the Court held an inquest to ascertain damages. At the inquest, Plaintiff testified that, during the period in which she was paid tips, she typically earned around $160 or $170 per day in credit card tips, plus between $5 and $15 in cash tips. (*See, e.g.*, Inquest Hr'g Tr., ECF No. 42, at 8:16–19, 11:11–15 (discussing average credit card tips); 15:18–20 (discussing average cash tips).) However, two to three days per week, the manager participated in the tip pool.[2] (*Id.* at 9:4–18.) On those days, she earned less than $100 in credit card tips, and lost approximately $10 in cash tips. (*Id.* at 11:11–12:3 (credit card tips); 15:18–23 (cash tips).) Plaintiff also confirmed that from July 31, 2023, through the end of her employment, Plaintiff took home no additional income from tips. (Pl. Decl., ECF No. 31-7, ¶ 9; Inquest Hr'g Tr., ECF No. 42, at 21:7–22:8.)

## II. Procedural History

As noted above, Plaintiff started this case by filing a complaint on August 25, 2023, followed by an amended complaint filed on March 22, 2024. (Compl., ECF No. 1; Am. Compl., ECF No. 11.) On June 20, 2024, Defendants answered the amended complaint. (Answer, ECF No. 21.) Shortly after discovery commenced, Defendants'

---

[2] Plaintiff further explained that when the manager participated in the tip pool, he was still serving in a managerial role but justified his participation in the tip pool because he was also covering some tipped work to, for example, fill in for a tipped employee. (Inquest Hr'g Tr., ECF No. 42, at 9:4–18.)

attorney filed a motion to withdraw.[3] (Mot. to Withdraw, ECF No. 24.) The Court held a hearing on the motion, at which Defendant Fazylov failed to appear despite being directed to do so. (Aug. 20, 2024 Scheduling Order; Aff. of Service, ECF No. 25; Sept. 19, 2024 Min. Entry & Order.) The Court granted the motion to withdraw for the reasons stated on the record. (Sept. 19, 2024 Min. Entry & Order.) Since that date, no Defendant has appeared.

Plaintiff requested a certificate of default, which the Clerk of Court granted on November 19, 2024. (Req. for Certificate of Default, ECF No. 27; Entry of Default, ECF No. 29.) On December 6, 2024, Plaintiff filed a motion for default judgment and supporting documents. (Mot. for Default J., ECF No. 31.) On December 9, 2024, the Honorable Ramón E. Reyes, Jr., referred the motion to the undersigned Magistrate Judge. (Dec. 9, 2024 ECF Order Referring Mot.) On February 13, 2025, the undersigned Magistrate Judge scheduled a default hearing for March 13, 2025, directed Defendants to appear, directed the Clerk of Court to serve a copy of the notice and scheduling order upon Defendants via mail and email, and directed Plaintiff to be prepared to address several procedural questions at the hearing. (Scheduling Order, ECF No. 34.) Defendant Fazylov did not appear at the conference. (Mar. 13, 2025 ECF Min. Entry & Order.)[4] At the conference, the Court took the motion for default judgment under advisement. (*Id.*)

---

[3] The motion to withdraw by Defendants' attorney indicated that Defendants had stopped communicating with counsel, that Defendants had gone out of business, and that counsel had not been paid and did not expect to be paid for his services. (Aff. in Supp. of Mot. to Withdraw, ECF No. 24-1, ¶¶ 5–7.) The Court granted that motion on September 19, 2024. (Sept. 19, 2024 Min. Entry & Order.)

[4] Defendant Fazylov replied to the email providing him with a copy of the notice and scheduling order, and copied his former attorney, indicating that he had actual notice of the hearing and the risk of default.

On August 11, 2025, the Court held an inquest to determine damages. (Aug. 11, 2025 ECF Min. Entry & Order; Inquest Hr'g Tr., ECF No. 42.) For the reasons set forth herein, the Court respectfully recommends granting the motion for default judgment in part.

## DISCUSSION

### I.  Legal Standards for Default

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b)(2); *see also* E.D.N.Y. Local Civ. R. 55.2(c). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[5] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

---

[5] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiff's motion papers substantially comport with these rules. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Rule 55.1(a)(1), (*see* Req. for Certificate of Default, ECF No. 27) and demonstrated that the Clerk of Court entered default, (*see* Certificate of Default, ECF No. 31-4); (2) demonstrated that Defendants have failed to defend the action and that the pleadings were properly served in

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Under Federal Rule of Civil Procedure 55(b)(2), courts have discretion to decide whether an evidentiary hearing is necessary or whether the amount of damages can be determined based on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). "The district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "plaintiff bears the burden of presenting proof of damages." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v.*

---

accordance with Local Rule 55.1(a)(2), (*see* Answer, ECF No. 7; Waiver of Service, ECF No. 17; Answer to Am. Compl., ECF No. 21); (3) demonstrated that Defendant Fazylov is not a minor and was not in the military during the relevant period, (*see* Affirmation in Supp. of Req. for Certificate of Default, ECF No. 27-1, ¶ 7; Records from Servicemembers Civil Relief Act, ECF No. 36-1); and (4) certified the mailing of the request for the certificate of default and the motion papers to Defendant Fazylov at his last known address and the business address of the Corporate Defendants, in accordance with Local Rule 55.1(a)(4) and 55.2(a)(3), (*see* Affs. of Service, ECF Nos. 28, 32, 33).

*Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989))). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Specific to FLSA and NYLL cases, "in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071 (SAS) (AJP), 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009), *report and recommendation adopted*, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009); *see also Rodriguez v. Yayo Rest. Corp.*, No. 18-CV-4310 (FB) (PK), 2019 WL 4482032, at *2 (E.D.N.Y. Aug. 23, 2019), *report and recommendation adopted*, 2019 WL 4468054 (E.D.N.Y. Sept. 18, 2019); *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002). Here, Plaintiff seeks compensatory damages, liquidated damages, pre- and post-judgment interest, and an award of attorney's fees and costs. (*See* Am. Compl., ECF No. 11, at 9–10.)[6] For the following reasons, the Court recommends entry of a default judgment in Plaintiff's favor and an award of damages, fees, costs, and interest, as detailed below.

---

[6] Plaintiff also formally seeks injunctive and declaratory relief, but does not argue that either form of relief is appropriate in her motion, nor does she propose any such relief in her proposed judgment. (*Compare* Am. Compl., ECF No. 11, at 9, *with* Mem. in Supp., ECF No. 31-1, and Proposed Order, ECF No. 36-2.) Plaintiff also formally seeks designation of this lawsuit as a collective action, but neither she nor any other parties have sought to raise other individuals' claims, nor has any other individual consented to be a party in a collective action here. (*Compare* Am. Compl., ECF No. 11, at 9, *with* Mem. in Supp., ECF No. 31-1, and Proposed Order, ECF No. 36-2.) The Court therefore deems any request for injunctive, declaratory, or collective relief to have been abandoned.

## II. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

### A. Willfulness

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendants are notified of court proceedings and yet fail to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81.

Here, there is no doubt that Defendants were aware of this lawsuit. Defendants answered the amended complaint and were proceeding to discovery before Defendants'

attorney moved to withdraw. (Answer, ECF No. 21; Mot. to Withdraw, ECF No. 24.) The Court held a motion hearing and directed all Defendants to attend (or, in the case of the Corporate Defendants, to send a representative); they did not do so. (Aug. 20, 2024 Scheduling Order; Aff. of Service, ECF No. 25; Sept. 19, 2024 Min. Entry & Order.) Defendants also received notice of the subsequent default hearing. (*See* Feb. 13, 2025 Scheduling Order.) Given that Defendant Fazylov responded to the Court's email notifying him of the hearing, as set forth *supra* note 4, he appears to have received actual notice of the default motion. In light of Defendants' failure to respond, despite demonstrated knowledge of this proceeding and the pending default motion, the Court weighs this factor strongly in favor of default.

### B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)).

Here, Defendants responded to the amended complaint. (Answer, ECF No. 21.) In that answer, Defendants asserted four seemingly boilerplate affirmative defenses: (1) failure to "state a cause of action upon which relief may be granted," (2) "[l]ack of employee-employer relationship," (3) "[l]ack of employment services rendered by Plaintiff," and (4) "Payment." (Answer, ECF No. 21, at ECF pp. 5–6.) Defendants' answer also formulaically denies almost every statement in Plaintiff's complaint. (*See generally id*. (denying almost all allegations in Plaintiff's amended complaint); *cf.* Am. Compl., ECF No. 11, ¶ 5 (denying "This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202."), ¶ 6 (denying "Plaintiff demands a trial

by jury."), ¶ 7 (denying "Plaintiff was, at all relevant times, an adult individual residing in Queens County, New York.").)

Here, while Defendants "filed an answer in this case, the answer contains only general denials and affirmative defenses," which is "inadequate to establish a meritorious defense for purpose of a default judgment analysis." *Colonial Sur. Co. v. William G. Prophy LLC*, No. 22-CV-1730 (AMD) (AYS), 2023 WL 7338784, at *7 (E.D.N.Y. Nov. 7, 2023); *see also State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. App'x 453, 456 (2d Cir. 2011) (summary order). Accordingly, this factor weighs in favor of granting Plaintiff's motion for default judgment.

## C. Prejudice

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 148 (E.D.N.Y. 2013). Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendants' failure to respond to both Plaintiff's and the Court's notices regarding the default motion and given the fact Defendants clearly had actual notice in this case, "there is no indication that requiring Plaintiff[] to take further steps . . . would be effective in eliciting a response from Defendants." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiff would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiff's motion, the Court recommends entering a default judgment.

## III. Liability and Damages

### A. FLSA Liability

To establish liability under the FLSA, a "plaintiff must prove the following: (1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship is not exempted from . . . [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018) (quotation marks omitted), *report and recommendation adopted*, Sept. 12, 2018 ECF Order Adopting R. & R.

### 1. *Employers Subject to the FLSA*

An employer is subject to the FLSA if (1) their employees are "engaged in commerce," or (2) the employer is an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207; *see also Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively. *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007). A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. §§ 203(s)(1)(A)(i)–(ii). "Commerce" is, in turn, defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Here, the Court finds that Plaintiff has adequately alleged that Corporate Defendants are an "[e]nterprise engaged in commerce" and therefore subject to the

FLSA. 29 U.S.C. § 203(s)(1). Plaintiff alleges that Corporate Defendants run a restaurant that employed her as a server and that Corporate Defendants had "employees that handle goods and materials that have been produced for and moved in commerce, . . . including computers, food, glassware and alcohol." (Am. Compl., ECF No. 11, ¶¶ 14, 19.) Plaintiff further alleges that Defendants' "annual gross volume of business is at least $500,000." (*Id.* ¶ 14.)

Although Plaintiff's allegations are somewhat conclusory, courts have noted that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (quotation marks omitted); *see also Jacobs*, 577 F.3d at 99 n.7. In addition, even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Archie*, 997 F. Supp. at 530. As Plaintiff alleges, and as the Court may safely infer, goods and materials produced in interstate commerce were used in the operation of Defendants' business. (*See* Am. Compl., ECF No. 11, ¶¶ 14, 18). *See Romanowicz*, 577 F.3d at 84 ("In light of [a defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor . . . ."); *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) (finding that employer was engaged in interstate commerce where it was "simply inconceivable that none of the [goods] used" in its business "originated outside of New York"). Given the nature of Corporate Defendants' business, it is reasonable to infer that the materials used in operating the restaurant were not exclusively sourced in New York. Accordingly, the Court finds that Plaintiff's allegations are sufficient to establish that Corporate Defendants are subject to the FLSA.

With respect to Defendant Fazylov, the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An individual may be liable as an employer under the FLSA so long as he exercises 'operational control' over the employee in question[,] . . . and individuals who are found to be 'employers' under the FLSA may be held jointly and severally liable to the plaintiff." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451 (CBA) (CLP), 2016 WL 8376837, at *5 (E.D.N.Y. Dec. 21, 2016) (citation omitted), *report and recommendation adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated by stipulation on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018). Here, Plaintiff alleges that "Defendant Fazylov was and continues to be the owner and principal of" Corporate Defendants, and that "he exercises control over Defendants' employees including: (i) hiring and firing; (ii) determining work schedules; (iii) setting rates of pay; and (iv) otherwise mandating the terms and conditions of employment." (Am. Compl., ECF No. 11, ¶¶ 10, 11.) Taking Plaintiff's allegations as true in the context of this default, the Court finds that Defendant Fazylov was an employer subject to the FLSA. *See, e.g.*, *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *4 n.4 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

2. *Employees Covered by the FLSA*

Under the FLSA, an "employee" generally means "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *see generally id.* § 203(e). "In light of [this] broad definition . . . , the Second Circuit has found allegations which simply 'state where the plaintiffs worked, outline their positions, and provide their dates of employment' sufficient to support a finding of employee status . . . ." *Suggs v. Crosslands Transp., Inc.*,

No. 13-CV-6731 (ARR) (MDG), 2015 WL 1443221, at *3 (E.D.N.Y. Mar. 27, 2015) (quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013)).

Here, Plaintiff alleges that she was employed as a server at Defendants' restaurant from June 10, 2023, through August 12, 2023. (Am. Compl., ECF No. 11, ¶¶ 18, 19.) "It follows, therefore, that for purposes of this default, [Plaintiff] qualifies as an 'employee' under the FLSA." *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014); *see also Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (stating that the "ultimate question is . . . whether as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself]" (alterations in original) (quotation marks omitted)). Taking Plaintiff's allegations as true in the context of this default, the Court finds that Plaintiff was an employee covered by the FLSA.

3. *FLSA Exemptions*

Finally, the Court does not find any basis for exempting the employment relationship at issue here from the FLSA's provisions. *See* 29 U.S.C. § 213(a) (setting forth the relevant exemptions). As noted above, Plaintiff alleges that Defendants employed her as a server — a position of employment not contemplated by any of the statutory exemptions. (Am. Compl., ECF No. 11, ¶ 19.) *See* 29 U.S.C. § 213(a). For the purposes of this default motion, Plaintiff has therefore adequately alleged facts establishing applicability of the FLSA as a predicate to her claims under that statute.

**B. Liability Under the NYLL**

To recover under the NYLL, Plaintiff must first "prove that [s]he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) (quotation marks omitted) (alteration in original) (citing NYLL § 650 *et*

*seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2); *see also Lauria v. Heffernan,* 607 F. Supp. 2d 403, 407–08 (E.D.N.Y. 2009). "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.,* 293 F.R.D. 516, 526 (S.D.N.Y. 2013), *rev'd on other grounds,* 811 F.3d 528 (2d Cir. 2016); *see Ethelberth,* 91 F. Supp. 3d at 360 (explaining that the NYLL's definition of an employer is broader than the FLSA's). Having already found that Plaintiff has sufficiently pled that Defendants were employers and that Plaintiff was an employee under the FLSA, the Court finds that Plaintiff has also adequately alleged an employee relationship with Defendants under the NYLL.

### C.  Violations of the FLSA and the NYLL

Having determined Defendants' liability, the Court must now decide whether Plaintiff is entitled to a default judgment and damages. As a preliminary matter, the Court notes that Plaintiff's claims fall within the relevant statutes of limitation. *See* 29 U.S.C. § 255(a) (two years for ordinary FLSA violations); NYLL § 198(3) (six years). The Court first turns to an evaluation of Plaintiff's claim that Defendants failed to provide wage notices and statements in violation of the New York Labor Law (third and fourth causes of action) and then turns to Plaintiff's unlawful misappropriation of tip claims (first and second causes of action).

#### 1.  *New York Wage Theft Prevention Act Violations*

Plaintiff requests a default judgment with respect to Defendants' alleged violations of the NYLL's wage notice and statement requirements, which were codified as part of the New York Wage Theft Prevention Act ("WTPA"). *See* NYLL §§ 195, 195(3). Under these provisions, an employer must provide its employees: (1) "written notice of their rate, how it will be paid ('by the hour, shift, day, week, salary, piece, commission or other'), allowances, ('including tip') and the employer's address and contact

information," and (2) "'a statement of every payment of wages.'" *Zambrano v. Envios Espinoza, Inc.*, No. 22-CV-3031 (OEM) (SIL), 2025 WL 1808694, at *11 (E.D.N.Y. July 1, 2025) (quoting NYLL §§ 195(1), 195(3)). An employer who fails to provide the required notices and statements is liable for statutory damages. *See* NYLL §§ 198(1-b), 198(1-d).

A plaintiff must establish standing for each claim alleged and cannot rely on a district court's supplemental jurisdiction over state law claims to do so. *See Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 302, 304 (2d Cir. 2024) (analyzing Article III standing in the context of NYLL wage notice and statement claims). "The requirements of Article III standing are well established: '[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). These requirements are "an indispensable part of [a] plaintiff's case" and must be established "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "At the default judgment stage, as at the motion to dismiss stage, the plaintiff 'bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Hennesssy ex rel. Hennessy v. Poetica Coffee Inc.*, No. 21-CV-5063 (KAM) (RML), 2022 WL 4095557, at *2 (E.D.N.Y. Sept. 7, 2022) (quoting *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022)).

Importantly, "a plaintiff must demonstrate standing for each claim [s]he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). This includes any state law claim filed in federal court pursuant to the court's supplemental jurisdiction. In other words, the court cannot "exercise supplemental jurisdiction over a [state law] claim that does not itself satisfy [the] elements of the Article III inquiry." *Id.* at 351–52;

*see Sharehold Representative Servs. LLC v. Sandoz Inc.*, No. 12-CV-6154 (DLC), 2013 WL 4015901, at *7 (S.D.N.Y. Aug. 7, 2013) ("The fact that the claims arise from a common set of facts does not relieve the plaintiff of its obligation to demonstrate constitutional standing to sue for each one."); *see also Guthrie*, 113 F.4th at 304 (finding that supplemental jurisdiction does not excuse a plaintiff from needing to demonstrate standing for a state law statutory damages claim); *Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 264–67 (E.D.N.Y. 2022) (concluding that NYLL § 195 creates distinct causes of action for wage notice and statement claims, that Article III standing is required for each, and that the court lacked subject matter jurisdiction over the claims).

The Supreme Court has also "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (quoting *Spokeo*, 578 U.S. at 341). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original). In the context of claims brought under the WTPA, the alleged concrete injury-in-fact must "result[] from the failure to provide the wage notices and wage statements to maintain a claim for statutory damages under New York Labor Law § 195." *Guthrie*, 113 F.4th at 302–03. Without a concrete injury fairly traceable to the alleged statutory violation, a plaintiff lacks Article III standing, and, in turn, the district court cannot enter a default judgment with respect to the corresponding statutory cause of action. *See, e.g., Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).

In this case, Plaintiff alleges that her employer failed to provide the required wage notices and statements, but she has not articulated any cognizable actual injury

resulting from this failure. (Am. Compl., ECF No. 11, ¶¶ 32, 41–42; *see also* Mem. in Supp., ECF No. 31-1, at 6–7.) *See Guthrie*, 113 F.4th at 310. Absent any allegation of facts supporting Plaintiff's assertion of harm, or how her harm was fairly traceable to Defendants' failure to provide wage notices and statements, Plaintiff has failed to plead "facts that affirmatively and plausibly suggest that [she] has standing" with respect to her wage notice and statement claims. *Hennessy*, 2022 WL 4095557, at *2 (quotation marks omitted); *see Soule ex rel. Stanescu v. Conn. Assoc. of Schs., Inc.*, 57 F.4th 43, 50 (2d Cir. 2022) ("[C]ourts 'need not credit a complaint's conclusory statements without reference to its factual context.'" (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021))); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (framing the plausibility standard as whether the plaintiff's allegations have "nudged their claims across the line from conceivable to plausible").

Accordingly, the Court respectfully recommends dismissal of Plaintiff's NYLL wage notice and statement claims for lack of Article III jurisdiction. *See, e.g., Perez v. Mesa Azteca Corp.*, No. 23-CV-9374 (HG) (TAM), 2024 WL 5274641, at *10–11 (E.D.N.Y. Dec. 5, 2024), *report and recommendation adopted*, Dec. 30, 2024 ECF Order Adopting R. & R; *Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-CV-2053 (LDH) (TAM), 2023 WL 9603828, at *12 (E.D.N.Y. Dec. 27, 2023), *report and recommendation adopted*, Jan. 30, 2024 ECF Order Adopting R. & R.; *Neor v. Acacia Network, Inc.*, No. 22-CV-4814 (ER), 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023); *Sevilla*, 2022 WL 954740, at *7; *Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 339–41 (S.D.N.Y. 2022).

2.  *Unlawful Misappropriation of Tips*

With respect to the withholding of her tips, Plaintiff alleges that Defendants violated the FLSA and the NYLL in two ways: first, by claiming a tip credit without providing the requisite notice; and second, by improperly allowing a manager to

participate in the tip pool.[7] (Am. Compl., ECF No. 11, ¶¶ 31–37, 48, 54.) The Court takes each allegation in turn.

    a.  <u>Claiming a Tip Credit Without Proper Notice</u>

"Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." *Inclan v. New York Hosp. Grp. Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015); *see* 29 U.S.C. § 203(m); N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.2(a), 146-1.3. Under the FLSA, an employer may only claim a tip credit if it identifies to the employees the sections of the FLSA that allow that tip credit. *Inclan*, 95 F. Supp. 3d at 497. Employers bear the burden to show that they affirmatively identified the relevant sections of the FLSA to their employees, in their primary language, individually rather than through posters or other generalized means. *See Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 465–66 (S.D.N.Y. 2015).

The NYLL's requirements are similar but more rigorous than the FLSA's in this context. Under New York law, employers must demonstrate that they provided each employee with written documentation of the size of any tip credit. *Id.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2(a) (requiring that employers notify employees of "the amount of tip credit, if any, to be taken from the basic minimum hourly rate" and providing a sample form notice); *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 254

---

[7] Plaintiff refers to the tip pool itself as "unlawful." (Am. Compl., ECF No. 11, at 5; Mem. in Supp., ECF No. 31-1, at 2.) However, neither Plaintiff's allegations nor the memorandum in support illustrate how the tip pool as a whole — as distinguished from a manager's participation or Defendants' unannounced tip credit — was unlawful.

(S.D.N.Y. 2021). The employer must keep the employee's written acknowledgement of that notice for six years. *Chichinadze*, 517 F. Supp. 3d at 254.

In other words, "an employer is not entitled to apply a tip credit unless the employer meets certain conditions, including sufficient notice to the employee." *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 495 (S.D.N.Y. 2024); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) (citing 29 U.S.C. § 203(m), and NYLL § 196–d); *Salinas*, 123 F. Supp. 3d at 465–66. Both the FLSA and NYLL requirements are strictly construed. *See Salinas*, 123 F. Supp. 3d at 465; *Chichinadze*, 517 F. Supp. 3d at 254. Employers who fail to establish that they provided employees with the requisite notice are liable for paying the employee full minimum wage. *Chichinadze*, 517 F. Supp. 3d at 254.

Plaintiff claims that Defendants withheld a tip credit without providing notice. (*See generally* Am. Compl., ECF No. 11.) Under both the FLSA and the NYLL, any tip credits Defendants may have claimed that deprived Plaintiff of the minimum wage were unlawful in the absence of proper notice. *See Salinas*, 123 F. Supp. 3d at 466–67; *see also Inclan*, 95 F. Supp. 3d at 497–98.

Between June 10, 2023, and July 30, 2023, Plaintiff's base pay was $10 per hour, or $5.00 per hour less than minimum wage. (*Compare* Am. Compl., ECF No. 11, ¶¶ 25, 38, *with* New York Department of Labor, History of Minimum Wage, *available at* https://dol.ny.gov/history-minimum-wage-new-york-state (listing $15.00 as the minimum wage for Nassau County after December 31, 2021).) For this period, the Court finds that Plaintiff has adequately alleged that her employers improperly withheld pay at the minimum wage rate, entitling her to an additional $5.00 per hour worked.

After July 30, 2023, Plaintiff's hourly pay exceeded minimum wage, but she was paid no tips. (*See* Pl. Decl., ECF No. 31-7, ¶¶ 9, 18 (stating that she made $19.50 per

hour).) At the inquest, counsel clarified that Plaintiff does not seek damages for unpaid minimum wages after July 30, 2023. (*See* Inquest Hr'g Tr., ECF No. 42, at 26:18–27:20.) Accordingly, for the period from July 31, 2023, to August 12, 2023, Plaintiff has not established, and in fact waives, any entitlement to damages based on a minimum wage violation but the Court finds that Plaintiff is entitled to her unpaid tips under both the FLSA and the NYLL. *See Borja v. MSK Rest. Corp*, No. 22-CV-6178 (EK) (VMS), 2025 WL 951402, at *15–16 (E.D.N.Y. Mar. 13, 2025) (stating that the FLSA and the NYLL both prohibit employers from keeping employees' earned tips, that under the FLSA this rule applies whether or not the employer takes a tip credit under the FLSA, and the test "'is the same as the one used to assess individual liability'" (quoting *Mangahas*, 2024 WL 4555669, at *18) (citing 29 U.S.C. § 203(m)(2)(B) and NYLL § 196-d)), *report and recommendation adopted*, 2025 WL 948122 (E.D.N.Y. Mar. 29, 2025).

   b.  Unlawful Managerial Participation in Tip Pool

   Under both the FLSA and the NYLL, managers or other employees who exercise "meaningful or significant authority or control over subordinates" may not participate in tip pools.[8] *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 473 (2013); 29 U.S.C. § 203(m); *see Shahriar*, 659 F.3d at 240–41 (citing 29 U.S.C. § 203(m), and NYLL § 196-d); NYLL § 196-d; When evaluating whether an employee has meaningful or significant authority or control sufficient to prevent tip pool participation, courts consider "(1) the ability to discipline subordinates; (2) the ability to assist in performance evaluations; (3) the

---

[8] The standards under the FLSA and the NYLL are meaningfully similar in this context. *See Shahriar*, 659 F.3d at 246 (noting that "the FLSA and the NYLL use a similar standard" for determining whether employees are tip-eligible).

ability to participate in the process of hiring or terminating employees; and (4) having input in the creation of employee work schedules." *Condado v. P&C Bagels, Inc.*, No. 22-CV-1589 (NRM) (PK), 2023 WL 7686701, at *8 (E.D.N.Y. Sept. 27, 2023), *report and recommendation adopted*, Feb. 5, 2024 ECF Order Adopting R.& R. The plaintiff also bears the burden to establish that the defendants ran the tip pool. *See Yu v. Kotobuki Rest., Inc.*, No. 17-CV-4202 (JMA) (JMW), 2025 WL 1092861, at *3 (E.D.N.Y. Apr. 10, 2025) (noting that otherwise problematic tip pools do "not violate any law if the tip sharing is not mandated by the employer"). Where defendants unlawfully allow managing employees to participate in a tip pool, "Plaintiff is entitled to the tips that [the] Restaurant unlawfully withheld and the Court may accept Plaintiff's estimates regarding the amount [s]he is owed." *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV) (MMH), 2024 WL 4271234, at *15 (E.D.N.Y. Sept. 19, 2024).

Here, Plaintiff adequately alleges that Defendants gave the participating manager Mohammed Ali "meaningful and significant authority over their servers and bartenders and all other employees of Defendants." (Am. Compl., ECF No. 11, ¶¶ 34–35.) *Cf. Condado,* 2023 WL 7686701, at *8. She states that Ali led shifts, gave servers feedback, created the work schedule, handled the tip sheet, calculated and distributed tips, and handled complaints. (Am. Compl., ECF No. 11, ¶ 35.) He typically did not work as a server or receive tips directly from customers. (*Id*. ¶¶ 36, 37.) The Court finds that, based on the allegations in the complaint, Plaintiff has plausibly alleged that Ali primarily served in a supervisory role and was not eligible to participate in the tip pool. Nevertheless, Ali received "an equal/full portion of the pooled tips received from the servers' customers." (*Id.* ¶ 37.)

Although the record is somewhat thin on this point, Plaintiff also adequately alleges that Defendants controlled or directed the tip pool. As discussed above, Plaintiff

establishes that Ali was a manager, and she claims that he took tips and distributed them at the end of the shifts. (Am. Compl., ECF No. 11, ¶¶ 34–35.) At the inquest, Plaintiff testified that Ali would do the math for and "delegate" the tip pool. (Inquest Hr'g Tr., ECF No. 42, at 8:2–8.) Evidence that Defendants' managers run the tip pool can support a finding that Defendants directed the tip pool. *Cf. Shahriar*, 659 F.3d at 241; *Yu*, 2025 WL 1092861, at *3. Although it is not clear whether Defendant Fazylov directed Ali to run this tip pool or not, absent objections from Defendant, the Court recommends finding that Plaintiff's unrebutted allegations are sufficient to establish Defendants' liability regarding the alleged misappropriation of tips for purposes of this default.

Accordingly, the Court recommends finding that Defendants' default amounts to an admission of liability for violating the tip pool participation standards under the FLSA and the NYLL.

### D. Damages

As set forth above, Plaintiff alleges that she worked part time for Defendants, for between 20 to 25 hours per week over about four days per week, between June 10, 2023, and August 12, 2023. (Pl. Decl., ECF No. 31-7, ¶¶ 4, 7, 20.) Between June 10, 2023, and July 30, 2023, Plaintiff was paid less than minimum wage, and she typically earned around $160 or $170 per day in credit card tips, plus between $5 and $15 in cash tips. (*Id*. ¶ 8; Inquest Hr'g Tr., ECF No. 42, at 8:16–19 (stating that she took home about $160 on average in tips), 11:11–15 (confirming that she received between $160–170 in tips), 15:18–20 (discussing her average cash tips).) However, on the two to three days per week on which the manager participated in the tip pool, she earned less than $100 in credit card tips, and lost about $10 in cash tips. (Inquest Hr'g Tr., ECF No. 42, at 11:11–12:3 (discussing credit card tip change), 15:18–23 (discussing cash tip difference).) From July 31, 2023, through the end of her employment, Plaintiff was paid $19.50 per hour,

with no additional income from tips, despite a steady flow of tips from customers. (Pl. Decl., ECF No. 31-7, ¶ 9; Inquest Hr'g Tr., ECF No. 42, at 21:7–22:8.) The Court recommends finding that Plaintiff is entitled to compensation for (1) the gap between her pay and minimum wage for the first period, (2) withheld tips for the first period, and (3) the full amount of unpaid tips for the second period, for a total of **$3,534.57**, as detailed below.

1. *Minimum Wage*

For the period in which Defendants took a tip credit without proper notice, the Court recommends finding that Plaintiff is entitled to her full minimum wage. Between June 10, 2023, and July 30, 2023, Plaintiff's base pay was $10 per hour, or $5.00 per hour less than minimum wage. (*See* Am. Compl., ECF No. 11, ¶¶ 25, 38.) As noted above, after July 30, 2023, Plaintiff's hourly wages surpassed the minimum wage. Accordingly, because Plaintiff did not receive proper notice of the tip credit, the Court finds that Plaintiff is entitled to **$820.13** ($5 per hour x 22.5 hours per week x 7.29 weeks) in unpaid minimum wages for the period from June 10, 2023, to July 30, 2023.

2. *Unpaid Tips*

Plaintiff did not receive pay stubs or other documentation of the tips she received directly, but she alleges that she was deprived of some amount of tips each day that she worked. (Am. Compl., ECF No. 11, ¶¶ 38, 41–42, 57, 60; Pl. Decl., ECF No. 31-7, ¶¶ 15, 20.) At the inquest, Plaintiff clarified that between June 10, 2023, and July 30, 2023, she typically earned around $160–170 in credit card tips, and between $5–15 in cash tips, on each day she received her full share of tips. (Inquest Hr'g Tr., ECF No. 42, 11:11–15, 15:18–20.) However, two to three times per week, she was deprived of somewhere around $60–75 dollars in credit card tips (averaging $67.50) and approximately $10 per day in cash tips due to her manager's participation in the tip

24

pool. (*Id.* at 11:11–12:3, 13:20–15:23, 16:3–13, 9:4–18.) Accordingly, Plaintiff is entitled to withheld tips during this period. Based on her estimates, the Court finds that Plaintiff is entitled to **$1,412.44**[9] in missing tips for June 10, 2023, through July 30, 2023. From July 31, 2023, through August 12, 2023, a period of 1.86 weeks, Plaintiff earned base pay but no tips. (Pl. Decl., ECF No. 31-7, ¶ 9.) Accordingly, as explained above, Plaintiff is entitled to approximately $165 in tips per day for this time frame, for a total of **$1,302.00**[10] in unpaid tips during this second period. *See, e.g., Solis*, 2024 WL 4271234, at *15 (observing that courts may accept a plaintiff's estimate of withheld tips).

In light of the Court's finding that Defendants are liable for violations of the FLSA and NYLL's tip pooling provisions, the Court finds that Plaintiff is entitled to withheld tips totaling **$2,714.44**.

3.  *Liquidated Damages*

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employee is also entitled to

---

[9] For the first period of employment, from June 10, 2023, to July 30, 2023, for each day the manager participated in the tip pool, the Court estimates Plaintiff's damages using $67.50 per day (the average of $60–75 per day), to reflect the unpaid credit card tips, plus $10 per day, for the average missing amount of cash tips, for a total of $77.50 in unlawfully withheld tips per day. As set forth above, Plaintiff estimated that the manager participated in the tip pool 2 to 3 times per week, for an average of 2.5 days per week, over the course of this period (which was 7.29 weeks). The unlawfully withheld tip estimate for this period is thus based on a formula of $77.50 (average withheld tips) x 2.5 (days) x 7.29 (weeks), for a total of $1,412.44.

[10] For the second period of employment, from July 31, 2023, to August 12, 2023, the Court estimates Plaintiff's damages using $165 per day (the average of $160–170), to reflect the unpaid credit card tips, plus $10, for the average missing amount of cash tips, for a total unlawfully withheld tip amount per day of $175. This amount is multiplied by Plaintiff's estimate that she worked 4 days per week during this period, which was 1.86 weeks in duration. The unlawfully withheld tip estimate for this period is thus based on a formula of $175 (average withheld tips) x 4 (days) x 1.86 (weeks), for a total of $1,302.

recover liquidated damages under the NYLL. *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689 (LLS) (FM), 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."), *report and recommendation adopted*, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). In addition to unpaid wages, both the FLSA and the NYLL require Defendants to pay liquidated damages worth 100% of unpaid tips. *See* 29 U.S.C. § 216(b) ("Any employer who violates section 203(m)(2)(B) . . . shall be liable . . . in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages."); NYLL § 198(1-a) (requiring that defendants pay "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due"). Because a plaintiff cannot obtain a double recovery, courts award liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct."); *see, e.g.*, *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). Under these provisions, the Court recommends granting Plaintiff an award of liquidated damages equal to Plaintiff's compensatory damages under the NYLL, i.e., **$3,534.57**.

Having determined liability and damages, the Court now turns to pre- and post-judgment interest, attorney's fees, and costs.

**E. Pre- and Post-Judgment Interest**

1. *Pre-Judgment Interest*

 "It is well settled that in an action for violations of the [FLSA,] prejudgment interest may not be awarded in addition to liquidated damages.'" *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) (per curiam)). Because FLSA liquidated damages are meant to be compensatory and not punitive, prejudgment interest is not needed to restore plaintiffs to a position they would have been in absent the wage-protection violation. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015).

In contrast to the FLSA, the NYLL permits the award of both liquidated damages and prejudgment interest. *See Begum*, 2015 WL 223780, at *3. This is because New York State views liquidated damages as punitive, not compensatory; prejudgment interest is thus not considered a duplicative damages award. *See Janus v. Regalis Constr., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *8–9 (E.D.N.Y. July 23, 2012) (explaining that liquidated damages under the NYLL are "punitive in purpose"), *report and recommendation adopted*, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).

The availability of both liquidated damages and prejudgment interest under the NYLL "remains true even where liability is found not only under the NYLL but also under the FLSA." *Begum*, 2015 WL 223780, at *3 (citing *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011)). Prejudgment interest is calculated "on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. E. Manor USA Inc.*, No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted*, 2013 WL 2152176 (E.D.N.Y. May 17, 2013). Here, because Plaintiff may recover her wage deficiency and unpaid tips

under the NYLL, the Court finds that Plaintiff is entitled to prejudgment interest under the NYLL.

The statutory rate of interest in New York is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. *Id.* § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 49 (collecting cases); *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-5303 (DLI) (RER), 2018 WL 9945754, at *8 (E.D.N.Y. Oct. 17, 2018) (citing *Fermin*, 93 F. Supp. 3d at 49), *report and recommendation adopted*, Mar. 31, 2019 ECF Order Adopting R. & R. Under this approach, interest is to be accrued at the simple rate, from "[the] midpoint date . . . through the date judgment is entered." *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) (quotation marks omitted).

Here, given that the relevant dates of Plaintiff's employment are June 10, 2023, through August 12, 2023, the midpoint of Plaintiff's claim period is approximately July 11, 2023. The Court therefore recommends awarding prejudgment interest under the NYLL on Plaintiff's compensatory damages award of $**3,534.57** from July 11, 2023, through the date judgment is entered at a per diem interest rate of $**0.87** ($3,534.57 x 0.09 / 365).

2. *Post-Judgment Interest*

Plaintiffs are also generally entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the

statute, interest is calculated "'from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment.'" *Guauque Castiblanco v. Don Alex Peru, Inc.*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *8 (E.D.N.Y. Aug. 20, 2021) (alteration in original) (quoting 28 U.S.C. § 1961(a)), *report and recommendation adopted*, 2021 WL 4205195 (E.D.N.Y. Sept. 16, 2021). In *Fermin*, the court awarded post-judgment interest on all sums awarded pursuant to the plaintiffs' FLSA and NYLL claims. 93 F. Supp. 3d at 53. The same approach is appropriate here. The Court therefore respectfully recommends an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C. § 1961(a).

### F. Attorney's Fees and Costs

1. *Attorney's Fees*

Courts have broad discretion in determining a reasonable attorney's fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). The method for determining reasonable fees in this circuit is based on a number of factors, such as the labor and skill required to litigate the case, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation, and ability of the attorney, and awards in similar cases. *See Arbor Hill*, 522 F.3d at 186 n.3, 190. In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009) (recounting history of the forum rule). The forum rates in the Eastern District are

generally "$450–$650 for partners, $300–$450 for senior associates, $150–$300 for junior associates, and $100–$150 for paralegals." *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243–44 (E.D.N.Y. 2025) (footnote omitted). *See also Shin v. Party Well Rest & Oriental Bakery, Inc.*, No. 20-CV-1319 (CBA) (TAM), 2023 WL 8701337, at *3 (E.D.N.Y. Dec. 15, 2023) (approving slightly lower hourly rates in the FLSA context), *report and recommendation adopted*, 2024 WL 1327420 (E.D.N.Y. Mar. 28, 2024), *aff'd*, No. 24-1189, 2025 WL 783737 (2d Cir. Mar. 12, 2025).

Ordinarily, "the burden is on the fee applicant to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged." *Lin v. Joe Japanese Rest. Inc.*, No. 17-CV-3435 (WFK) (CLP), 2022 WL 2718584, at *4 (E.D.N.Y. June 7, 2022). Further, "case-specific factors like the novelty or complexity of the matter are appropriately considered in determining the reasonable hourly rate or hours billed." *Lilly v. City of New York*, 934 F.3d 222, 232 (2d Cir. 2019).

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended in order to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 183 ("[T]he district court should generally use the prevailing hourly rate in the district where it sits to calculate what has been called the 'lodestar' — what we think is more aptly termed the 'presumptively reasonable fee . . . .'"); *see also Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a

'presumptively reasonable fee.'" (quoting *Arbor Hill*, 522 F.3d at 183)). To calculate the presumptively reasonable fee, the Court looks at what a reasonable, paying client would be willing to pay, "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *see also Simmons*, 575 F.3d at 174.

With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) (quotation marks omitted); *see also Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 127–28 (E.D.N.Y. 2013). The court must review these time records and the hours an attorney billed in order to determine reasonableness and, in doing so, should examine the value of the work product and "'exclude excessive, redundant or otherwise unnecessary hours.'" *Concrete Flotation Sys., Inc. v. Tadco Constr. Corp.*, No. 07-CV-319 (ARR) (VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 2009)), *report and recommendation adopted*, 2010 WL 2539661 (E.D.N.Y. June 17, 2010). "[A] fee award should be based on scrutiny of the unique circumstances of each case." *McDaniel v. County of Schenectady*, 595 F.3d 411, 426 (2d Cir. 2010).

Here, Plaintiff's counsel seeks $16,592.50 in attorney's fees, and $448.13 in costs. (Mem. in Supp., ECF No. 31-1, at 10, 15.) Specifically, Plaintiff claims the following amount of attorney's fees are warranted:

| Title | Name | Hours Worked | Proposed Rate | Claimed Total |
|-------|------|--------------|---------------|---------------|
| Partner | Douglas B. Lipsky | 6.2 | $450 | $2,790.00 |

| Title | Name | Hours Worked | Proposed Rate | Claimed Total |
|-------|------|--------------|---------------|---------------|
| Associate | Frank J. Tantone | 42.7 | $300 | $12,830.00[11] |
| Paralegal | LiAnne Chan | 7.33 | $125 | $916.25 |
| Paralegal | Jasmine Hernandez | .45 | $125 | $56.25 |
| | | | Total: | $16,592.50 |

*Id.* at 10.

In support of the application for fees, Plaintiff's counsel provides contemporaneous billing records broken down in 6-minute increments, listing descriptions of tasks undertaken. (*See generally* Billing Records, ECF No. 31-5.) Plaintiff's counsel also provides descriptions of the qualifications of each professional who worked on the case. (Mem. in Supp., ECF No. 31-1, at 12–14.)

Having carefully reviewed the billing records, the history of the case, and the other case filings, as well as the attachments to Plaintiff's motion, the Court finds that the requested hourly rates for the attorneys align with standard rates in this district. As noted above, Mr. Lipsky, a partner, seeks an hourly rate of $450, and Mr. Tantone, a senior associate, seeks an hourly rate of $300, both of which are consistent with recent awards in this district. (*See* Mem. in Supp., ECF No. 31-1, at 10.) *See Rubin*, 763 F. Supp. 3d at 243–44; *Shin*, 2023 WL 8701337, at *4. The Court further finds that the number of hours worked is reasonable given the experience of the attorneys and paralegals and the tasks undertaken. (*See* Mem. in Supp., ECF No. 31-1, at 12–14; Billing Records, ECF

---

[11] Based on the numbers included in this chart, the Court's calculations indicate that Mr. Tantone's claimed fees would be $12,810, not $12,830. However, notwithstanding that unexplained discrepancy, the claimed total, $16,592.50, is separately supported by the billing records. (*See* Billing Records, ECF No. 31-5, at ECF p. 29.) Accordingly, as discussed below, the Court recommends awarding the total amount of requested fees.

No. 31-5.) *Cf. Concrete Flotation Sys., Inc.*, 2010 WL 2539771, at *5. Specifically, the Court notes that this case was litigated for over a year before Defendants' default, which resulted in a somewhat higher fee than is commonly seen in an FLSA default posture. The Court therefore recommends awarding $**16,592.50**, the full amount of the attorney's fees requested.

    2.  *Costs*

    "As a general matter, a prevailing plaintiff in an action under the FLSA or New York's Labor Law is entitled to recover costs from the defendant." *Santillan v. Henao*, 822 F. Supp. 2d 284, 301 (E.D.N.Y. 2011) (citing 29 U.S.C. § 216(b); N.Y.L.L. § 663(1)). Specific costs directly related to litigating the case are typically recoverable. *See, e.g., Reiseck v. Universal Commc'ns of Miami, Inc.*, No. 06-CV-0777 (LGS) (JCF), 2014 WL 5374684, at *8 (S.D.N.Y. Sept. 5, 2014) (evaluating request for costs involving "attorney transportation and meals, fees for court reporting services, expert retainer fees, investigative reports fees, WestLaw usage fees, and sundries including mail and photocopies"), *report and recommendation adopted*, Oct. 22, 2014 ECF Order Adopting R. & R., ECF No. 173; *see also Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (observing that "[c]osts relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable").

    Here, Plaintiff seeks $448.13 in expenses. (Mem. in Supp., ECF No. 31-1, at 15.) In support of that request, Plaintiff submits an "activities report" and receipts demonstrating that Plaintiff's counsel spent $850.13 on the filing fee ($402), mediation fee ($300), process server fees, and postage, along with receipts for mailings, $64.40 in service fees through the Secretary of State, $75 in service fees through other means, and several mailings that cost $0.97. (Costs, ECF No. 31-6.) Plaintiff does not seek reimbursement for all of these costs. (Mem. in Supp., ECF No. 31-1, at 15.) Plaintiff does

not submit receipts for the filing fee or the mediation fee, but the Court takes judicial notice of the $402 filing fee in this case, and the district's mediation fee, which is normally $600, split among the parties. The Court also finds that the types of expenses sought here are reasonable and "routinely recoverable as litigation costs." *Hancock v. I.C. Sys., Inc.*, 592 F. Supp. 3d 250, 258 (S.D.N.Y. 2022). Accordingly, the Court recommends awarding Plaintiff's counsel $448.13 in costs, as requested.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends dismissal of Plaintiff's NYLL wage notice and statement claims without prejudice. With respect to Plaintiff's remaining claims, the Court recommends finding that entry of default is warranted and that, under the default judgment standard, Plaintiff has established that Defendants violated the FLSA and the NYLL.

Accordingly, the Court recommends entry of judgment in the following amounts: **$3,534.57** in compensatory damages, **$3,534.57** in liquidated damages, **$16,592.50** in attorney's fees, and **$448.13** in costs, along with prejudgment interest at a per diem interest rate of **$0.87** from July 11, 2023, until the Clerk of Court enters final judgment. The Court further recommends an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C § 1961(a). Finally, the Court recommends that Plaintiff be awarded a fifteen-percent increase in damages under the

NYLL, not including post-judgment interest, for any amounts that are not paid within ninety days of judgment or the expiration of time to appeal.[12]

* * * * *

This report and recommendation will be filed electronically and a copy sent by mail to Defendants. As a courtesy, the Court also respectfully directs Plaintiff to provide a copy of this report and recommendation to Defendants forthwith and to file proof of same by **August 21, 2025**. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Ramón E. Reyes, Jr., at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . .

---

[12] The New York Labor Law provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See Rodriguez*, 2018 WL 7252949, at *12 (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021) (citing *Rodriguez* and limiting conditional fifteen percent increase to damages awarded under the NYLL), *report and recommendation adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent for any amounts unpaid after ninety days following the issuance of judgment or the expiration of the time to appeal. *See Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (ENV) (RML), 2017 WL 7625319, at *7 (E.D.N.Y. Nov. 7, 2017) (finding that the total amount of the judgment would automatically increase if any amount remained unpaid upon the expiration of ninety days following issuance of the judgment).

report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

     **SO ORDERED.**

Dated: Brooklyn, New York
     August 18, 2025

                              _____*Taryn A. Merkl*_____
                              TARYN A. MERKL
                              UNITED STATES MAGISTRATE JUDGE